**Elaine McREYNOLDS, Commissioner of Commerce and Insurance for the State of Tennessee as Receiver for Cherokee Insurance Company, Petitioner,**

v.

**CHEROKEE INSURANCE COMPANY, Respondent.**

**David S. WEED, Special Deputy Commissioner of Insurance for the Rehabilitation of Cherokee Insurance Company, Plaintiff/Appellee,**

v.

**DIAMOND FINANCIAL HOLDINGS, INC., Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section at Nashville.

Sept. 21, 1994.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 6, 1995.

Val Sanford, Gullett, Sanford, Robinson & Martin, Nashville, John Deq. Briggs, III, Michael J. Hurley, Howrey & Simon, Washington, DC, for defendant/appellant.

Michael L. Dagley, Farris, Warfield & Kanaday, Nashville, for plaintiff/appellee.

FARMER, Judge.

This case asks us to determine the rightful owner to the proceeds of a $4.2 million letter of credit. The trial court granted summary judgment in favor of the appellee, David S. Weed[1] and denied summary judgment for the appellant, Diamond Financial Holdings, Inc. (Diamond). Diamond appeals and presents the following issue for consideration:

> Whether the Chancery Court erred in looking to the terms of the letter of credit agreement between Cherokee and Continental Bank instead of the controlling underlying agreement between Cherokee and Diamond to determine whether Cherokee or Diamond was entitled to the letter of credit proceeds.

Weed presents the following additional issues:

> 1. Whether the Chancery Court correctly held that Cherokee was entitled to the LOC proceeds when:
>
> > (a) Cherokee's presentment to Continental Bank complied with the express terms of the LOC;
> >
> > (b) The alleged oral side agreement was not a term of the LOC; and
> >
> > (c) Tennessee case authority is settled that a LOC is independent of any under-

---

1. In September 1984, the Commissioner for Commerce and Insurance for the State of Tennessee appointed Mr. Weed Special Deputy Commissioner of Insurance to act as the rehabilitator of Cherokee Insurance Company (Cherokee) which was placed in receivership. Throughout this opinion, we will refer to the appellee as "Cherokee's rehabilitator," "Cherokee's receiver" or "Weed."

lying agreement between the parties and the beneficiary of a LOC (Cherokee) and must be paid according to the terms of the LOC without regard to any underlying or side agreements.

2. Whether the Chancery Court correctly held that Diamond could not pursue its claim on the alleged oral side agreement in this action, when:

(a) Diamond and Cherokee expressly agreed that Diamond would file any claim on the side agreement in Cherokee's receivership proceeding;

(b) The Chancery Court had issued an injunction in Cherokee's receivership prohibiting any action or claim against Cherokee's assets, other than through the receivership proceeding;

(c) Diamond did not file a claim in Cherokee's receivership on the alleged oral side agreement but instead filed a counterclaim in this action to recover the proceeds; and

(d) A payment of the proceeds in this action to Diamond would violate the claims procedure set forth in T.C.A. § 56-9-119 and elevate Diamond from a general unsecured creditor to a creditor having priority over all other creditors.

We briefly recount the history between these parties which has given rise to this lawsuit. Cherokee is a wholly owned subsidiary of Diamond. In the mid 1970s, Cherokee became involved in the reinsurance business.[2] A portion of Cherokee's risks were reinsured by Universal Marine Insurance Company, Ltd. (UMIC). UMIC was to provide Cherokee with "security in the form of a letter of credit or cash on deposit" to cover the percentage of risks it reinsured, on a yearly basis. The letter of credit extended by UMIC in 1983 was approximately $8.5 million and expired in January 1984. UMIC failed to furnish a letter of credit or cash on deposit in the approximate amount of $12.7

million for the year 1984,[3] prompting Cherokee to draw down the $8.5 million letter of credit. This resulted in a shortage of $4.2 million and severe financial difficulty for the company, including the likelihood that it would be unable to continue in the reinsurance business. To rectify the situation, Diamond and Cherokee orally agreed that Diamond would provide a replacement letter of credit.

The letter of credit, for the express amount of $4,233,409, identifies Diamond as "applicant" and Cherokee as "beneficiary." It was issued February 27, 1984 to expire December 31, 1984 and states:

We hereby establish in your favor our Irrevocable Standby Letter of Credit Number 6325065 which is available for payment of your drafts at sight, drawn on Continental Illinois National Bank and Trust Company of Chicago, bearing the clause "DRAWN UNDER CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, CHICAGO, ILLINOIS, CREDIT NUMBER 6325065," and accompanied by:

Beneficiary's signed statement certifying that:

"The amount claimed is due and payable and we have delivered to the Applicant written notice, ten (10) days prior to the actual date of this presentation, stating that such amounts are due."

Copy of the above written notice.

. . . .

We hereby engage with you that your drawings in conformity with the terms of this letter of credit will be duly honored on presentation.

Cherokee was placed in receivership in July 1984. An "Order of Temporary Injunction and Appointment of Receiver for the Purposes of Rehabilitation" was entered by

---

2. John Ryman, Cherokee's president, states that this involves reinsuring other insurers. Cherokee would accept a percentage of the risk on other companies' policies and in return, receive a percentage of the premiums paid. Ryman further states, "[i]n this way Cherokee and other reinsurers spread risk through layers of reinsurance ... [decreasing] the possibility that any one insurance company will be wiped out by a major catastrophe...."

3. The record indicates that, in December 1983, UMIC sued Cherokee seeking to rescind their agreement. Cherokee filed a counterclaim alleging breach of contract.

the Chancery Court for Davidson County, specifying:

> All persons, corporations or associations within the jurisdiction of this court are hereby enjoined and restrained from commencing, or further prosecuting any action at law or in equity or any other proceedings, including but not limited to any arbitration proceedings, against [Cherokee] or the receiver, or from in any way interfering with the receiver in his possession or control of all assets of [Cherokee] within the jurisdiction of this court.

> All policyholders, creditors and claimants of [Cherokee] are hereby enjoined and restrained from asserting any claim against [Cherokee] except in these receivership proceedings.

Weed, by letter dated October 30, 1984, notified Diamond that the sum of $4,233,409 was due Cherokee. The letter states, "[t]his notice is given in accordance with the provisions of the . . . letter of credit." On November 13, 1984, Weed attempted to draw down the letter of credit. On November 16, 1984, Diamond sued Continental Bank seeking to enjoin it from paying the funds to Cherokee's receiver. A temporary restraining order was issued by the Circuit Court of Cook County, Illinois. At Cherokee's request, the Chancery Court for Davidson County issued an order restraining Diamond from taking further action in the Illinois litigation. An order was also entered charging Diamond with contempt.

On December 3, 1984, Diamond, Continental and Cherokee's receiver entered into an agreement obligating the Bank to pay the letter of credit proceeds to Cherokee's receiver. The funds were to be deposited in a segregated account subject to the jurisdiction and control of the chancery court. In return, Cherokee, inter alia, was to request that the contempt order be dissolved. Further, Diamond and Continental stipulated that the form of the documents presented by Chero-

kee's receiver were in accord with the terms and conditions of the letter of credit. Diamond expressly did not stipulate that the letter of credit funds were "due and payable." The agreement further provided:

> Nothing in this Agreement shall prejudice the rights of Cherokee's Receiver to assert at a future date any other claims which it has or may have against Diamond or any third party. Nothing in this Agreement shall prejudice the rights of Diamond to assert at a future date in Cherokee's Receivership proceedings any claims which it has or may have to the funds transferred, including its claim that Cherokee is not entitled to the proceeds of the Letter of Credit or any interest thereon.

Finally, Diamond and Cherokee's receiver agreed to release and discharge Continental from all liability arising from the letter of credit upon performance of its obligations under the contract.

On April 17, 1989, Cherokee's rehabilitator filed the present action against Diamond claiming entitlement to the letter of credit proceeds. Diamond counterclaimed, asserting its right to the funds on the basis that they "never became due and payable" because Cherokee failed to comply with certain agreed upon conditions.[4] The parties filed cross motions for summary judgment with Weed contending, inter alia, that the chancery court's temporary injunction prohibited Diamond from asserting its counterclaim. In entering judgment for Cherokee, the trial court held:

> In this case the letter of credit did not contain any explicit reference to an underlying contract. . . . Diamond has conceded that Cherokee complied with the terms on the face of the LOC when it attempted to draw on the LOC. Diamond cannot assert the underlying contract as a defense to the Rehabilitator's rights because of the independence of the LOC. If Diamond had

---

4. Diamond alleged that it was the parties' understanding that the "Letter of Credit could not be drawn down unless UMIC's allocable share of Cherokee's due and payable losses under the reinsurance agreements between UMIC and Cherokee exceeded the amount of UMIC funds held by Cherokee, including the $8.5 million which Cherokee obtained by drawing down UMIC's 1983 Letter of Credit." Further, as of November 13, 1984, UMIC's allocable share of losses did not exceed the amount of UMIC funds held by Cherokee. Weed, in answering the counterclaim, denied that such conditions existed.

wanted to place additional conditions for drawing on the LOC, it should have placed those terms on the face of the LOC.

. . . .

Whether or not any oral side agreement existed in this case is immaterial. Even if Diamond could show that it had a separate underlying oral agreement with Cherokee, such an agreement has no effect on Cherokee's right to receive the proceeds of the LOC. Any dispute between the beneficiary and the customer based on an underlying agreement should be addressed in an action separate from any action on the letter of credit.

On appeal, Diamond insists that this is a contract case and not a letter of credit case and that the trial court erred in labeling the oral side agreement "immaterial." Diamond asserts that the letter of credit "governed only whether Cherokee could require Continental Bank to honor Cherokee's demand for payment under the terms of the [letter of credit]" and "[t]hat issue was resolved [pursuant to the agreement]." The present dispute, according to Diamond, is "governed solely" by the terms of the underlying agreement. It is additionally argued that the proceeds never became the property of Cherokee as they were placed in a custodial account pending judicial determination of the rightful owner pursuant to the underlying agreement.

■ *Bossier Bank & Trust Co. v. Union Planters Nat'l Bank*, 550 F.2d 1077 (6th Cir. 1977), holds that a letter of credit is an independent contract between the issuer and the beneficiary. If the beneficiary presents his draft accompanied by documents in proper form, as called for in the letter of credit, to the issuer, the draft must be honored. This is so despite any nonconformity in the underlying contract. *Bossier Bank*, 550 F.2d at 1081.

The official comments to § 47–5–114 [5] state:

The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article [Chapter] as independent of the underlying contract between the customer and the beneficiary. . . . In view of this independent nature of the letter of credit engagement, the issuer is under a duty to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract.

■ Finally, *Bossier Bank* notes that "[t]he court must assume that the issuer drafted the letter of credit in accordance with the directions of its customer and that if the terminology of the letter of credit was unsatisfactory to either they would have amended it accordingly." *Id.* at 1082. The letter of credit in this case does not contain any conditions pursuant to an underlying agreement. Diamond and Continental stipulated to the form of the documents presented by Cherokee as in accord with the terms and conditions of the letter of credit. Consequently, we hold that Cherokee was entitled to receive the funds as dictated by the terms of the letter of credit.

The trial court ruled that any action based upon the underlying agreement should be pursued in a separate action. § 2 of the comments to official text to § 47–5–114 states, as here pertinent:

The risk of the original bad-faith action of the beneficiary is thus thrown upon the customer who selected him rather than upon ... the issuer. . . .

When, however, no innocent third parties as defined in subsection (a) are involved the issuer is no longer under a duty to honor; ... the issuer if he acts in good faith is given the privilege of honoring the draft as against its customer, ... with a right of reimbursement against him. The issuer may, however, refuse honor. In the event of honor, an action by the customer against the beneficiary will lie by virtue of

5. **Issuer's duty and privilege to honor—Right to reimbursement.**—(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of

whether the goods or document conform to the underlying contract for sale or other contract between the customer and the beneficiary.

either the underlying contract or Section 5–111(1) of this Article [Chapter].

Summary judgment is an appropriate means to dispose of cases that can be resolved solely on controlling legal issues. *Biogen Distributors, Inc. v. Tanner,* 842 S.W.2d 253, 255 (Tenn.App.1992). As we see it, the overriding issue in this case is whether Diamond may legally pursue its claim, based upon the underlying contract, in this action. Considering the evidence in a light most favorable to Diamond, we hold that it cannot. The temporary injunction issued by the chancery court expressly prohibits the filing of any claim against Cherokee "except in [the] receivership proceedings." Furthermore, the agreement executed by Continental, Diamond and Cherokee's receiver obligates Diamond to pursue its right to the proceeds in these same proceedings.

Diamond asserts that the agreement does not preclude its present action because "[n]owhere does the [agreement] provide that Diamond may assert its claim to the ... proceeds under the underlying agreement only in Cherokee's receivership proceeding...." We find the contrary to be true. The agreement unequivocally states that Diamond maintains the right to assert "at a future date in Cherokee's receivership proceedings *any claims* which it has or may have to the funds transferred, including its claim that Cherokee is not entitled to the proceeds of the Letter of Credit...." (Emphasis added.) Diamond further argues that the temporary injunction does not apply as it is not asserting the counterclaim as a "creditor" or "claimant" of Cherokee, but that it is merely seeking to recoup its own property. As we have determined that Cherokee was entitled to receive the proceeds in accord with the terms of the letter of credit, we cannot agree.

In addition to the allegation that Cherokee failed to abide by the conditions imposed under the oral side agreement, Diamond argues that the funds were held subject to a constructive trust. We find that it is necessary for Diamond to litigate such in Cherokee's receivership proceedings as dictated by the chancery court injunction and the parties' agreement.

The summary judgment entered in favor of Cherokee is affirmed. Costs are taxed to Diamond Financial Holdings, Inc., for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.